IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CAROL BOULE, | ) | Civil No. 09-355-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Merrill Schneider
       Attorney at Law
       P.O. Box 16310
       Portland, OR 97292-0310

            Attorney for Plaintiff,

       Dwight C. Holton
       U.S. Attorney
       Adrian L. Brown
       Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204-2902

            Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Carol Boule brings this action pursuant to 42 U.S.C § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-34.  Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the decision of the Commissioner should be reversed, and the action should be remanded to the Agency for an award of benefits.

## Procedural Background

Plaintiff filed an application for disability benefits on January 15, 2004, alleging that she had been disabled since February 28, 2003, because of depression, asthma, and arthritis. After her application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ Timothy Terrill on July 6, 2006.  In a decision dated July 28, 2006, ALJ Terrill found that plaintiff was not disabled within the meaning of the Act.  On February 15, 2007, the Appeals Council denied plaintiff's request for review of that decision, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the denial of her application to the United States District Court. In a decision dated February 21, 2008, the Honorable Malcolm Marsh reversed the Commissioner's decision and remanded the action to the Agency for additional proceedings, including "full consultations by qualified medical professionals of Boule's mental and

physical functional capacities, followed by a reassessment of the medical evidence and

Boule's residual functional capacity."  Judge Marsh concluded that the ALJ had erred in

failing to consider whether plaintiff's obesity "alone or in combination with another medically

determinable physical or mental impairment . . . significantly limits [her] physical or mental

ability to do basic work activities."

On remand, a second hearing was held before ALJ Terrill on November 12, 2008.

In a decision dated December 16, 2008, the ALJ again found that plaintiff was not disabled

within the meaning of the Act.  That decision became the final decision of the Commissioner

when the Appeals Council denied plaintiff's request for review.  In the present action,

plaintiff seeks judicial review of that decision.


### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a

summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094,

1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in

substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate

the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more

severe impairments.  A claimant who does not have such an impairment is not disabled.

FINDINGS AND RECOMMENDATION - 3

If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

FINDINGS AND RECOMMENDATION - 4

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## Factual Background

Plaintiff was born on April 9, 1962, and was 46 years old when the second decision denying her application for disability benefits was issued. She was sexually abused by her stepfather from age 10 thorough age 25. Plaintiff was enrolled in special education classes during some of her time in school. She has a high school diploma, and has past relevant work experience as a child care provider. Plaintiff last worked in 2003, as a caregiver in a YMCA Daycare Center, and stopped working after she suffered a low back strain in a fall at work. At the time of that injury, plaintiff was 4'10" tall and weighed 330 pounds. At the time of the second hearing, plaintiff testified that she had lost weight performing water aerobics, and weighed 304 pounds at that time.

## Medical Record

The medical record establishes that plaintiff is extremely obese, and suffers from diabetes, partial deafness, asthma, mental deficits, depression, and post traumatic stress disorder (PTSD). In a form dated February 5, 2004, an Agency interviewer noted that plaintiff's hands were "quite puffy," and that plaintiff "appeared in pain when signing the forms" completed to apply for disability benefits. The interviewer also described plaintiff as "quite childlike in her communication . . . ." A consulting physician who examined plaintiff after this action was remanded to the Agency noted that plaintiff was limited by "weight and

lymphedema,"[1] and a brief summary of plaintiff's medical history included in a psychological evaluation conducted on July 30, 2007, lists lymphedema as one of plaintiff's diseases. However, I have found no record of a treating physician diagnosing plaintiff with lymphedema. The examining physician who listed lymphedema noted that plaintiff "alleges lymphedema," and it appears likely that the mention of this disease in a psychological evaluation was also based upon plaintiff's own report.

As noted above, plaintiff suffered a low back strain at work on March 13, 2003. In April, 2003, Dr. Pribnow, plaintiff's treating physician, noted that plaintiff's obesity prolonged her symptoms and treatment. In a chart note dated May 15, 2003, Dr. Pribnow stated that "looking at her, it is hard to image [sic] how she functions very well in a job which would require bending or lifting, and she has a huge amount of edema in her arms and legs and appears absolutely deconditioned." He added that he hoped to be able to release plaintiff for "regular work" when he saw her three weeks later. X-rays taken in June, 2003, showed mild degenerative changes in plaintiff's knees, spine, and hips.

In his report based upon an examination performed on June 23, 2003, Dr. Dejan Dordevich, an orthopedic rheumatologist, stated that plaintiff was "so morbidly obese that she was not asked to lay down for leg length measurement."

Plaintiff's mental difficulties include insomnia, depression, and psychomotor agitation, which has been attributed to sexual abuse that plaintiff reportedly suffered for 15 years. In 2004, Thomas Smurthwhaite, Ph.D., plaintiff's therapist, diagnosed PTSD and

---

[1]Lymphedema is swelling in the arms or legs, which is caused by abnormalities in the lymphatic system. It is incurable, and is characterized by disfiguring fluid retention and swelling of tissue. Social Security Disability Listing 4.00 paragraph 4(a); (20 C.F.R. Part 404, Subpart P, Appendix 1). Lymphedema causes pain, fibrosis, and the loss of function due to tissue engorgement. Id.

FINDINGS AND RECOMMENDATION - 6

rated plaintiff's Global Assessment of Functioning (GAF) at 65. Duane Kolilis, Ph.D., performed a psychodiagnostic evaluation on April 13, 2004. Dr. Kolilis opined that plaintiff was "mentally capable of understanding and following at least simple one-to-two step instructions," and added that there were "no significant mental problems that would preclude any areas of employment." He added that plaintiff's overall attention and concentration were "good," and opined that plaintiff was "functioning in the Average range of intellectual abilities." Dr. Kolilis diagnosed Adjustment Disorder With Depressed Mood, Chronic, Mild, and rated plaintiff's GAF at 75.

In a form dated June 21, 2006, Barbara Brown, a nurse practitioner, indicated that plaintiff's medical condition included degenerative joint disease, asthma, edema, obesity, PTSD, hypertension, allergies, and depression. She opined that plaintiff could occasionally lift up to 20 lbs. Ms. Brown declined to offer further opinions concerning plaintiff's functional capacity, noting that this analysis would require functional capacity testing which had not been performed.

Dr. Kurt Brewster evaluated plaintiff's functional capacity in August, 2008. Dr. Brewster described plaintiff as "morbidly-obese," and noted that her reported weight of 316 pounds exceeded the capacity of his scale. He reported that plaintiff transferred "on and off table with difficulty," and that a back examination revealed "multiple painful areas over the lumbosacral, paraspinal and buttock regions." Dr. Brewster noted "gross enlargement of the lower extremity," adding that, while the thigh of an average male is approximately 40 to 50 centimeters, plaintiff's "calves were 70 centimeters." He stated that, "given weight and degenerative changes, I do find significant evidence limiting claimant's mobility to sedentary . . . ." In his functional capacity assessment, Dr. Brewster indicated that plaintiff

could sit for one hour at a time without interruption, and could stand and walk for 30 minutes at a time. He opined that, during an 8-hour work day, plaintiff could sit for one hour, stand for six hours, and walk for one hour.[2] In addition, he concluded that, while plaintiff could occasionally climb stairs and ramps and balance, she could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. As noted above, Dr. Brewster indicated that plaintiff had "limitations from weight and lymphedema."

In 2008, Gregory Cole, Ph.D., performed a psychodiagnostic evaluation. He found that plaintiff's "thought processing and thought content were generally organized," and her "insight and judgment were noted to be fair." Plaintiff scored 39 on the Beck Depression Inventory-II, which Dr. Cole interpreted as indicating "a severe level of self-reported depression symptomatology." Dr. Cole diagnosed Major Depression, Recurrent, and Pain Disorder Associated with Psychological Factors and a General Medical Condition. He rated plaintiff's GAF at 58.

According to plaintiff's mother, plaintiff's family "has a lot of retardation," and plaintiff "came very close to being retarded herself and probably is in some ways."

## ALJ's Decision

At the first step of his analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.

---

[2]This is the only evidence in the medical record indicating that plaintiff's ability to stand exceeds her ability to sit. The conclusion that a morbidly obese individual can stand for 6 hours and sit for only 1 hour is counter intuitive. As noted below, the ALJ concluded that plaintiff could stand and walk a total of 2 hours during an 8-hour work day.

At the second step, the ALJ found that plaintiff's severe impairments included degenerative disc disease, obesity, adjustment disorder, PTSD, and asthma.

At the third step, the ALJ found that, alone or in combination, plaintiff's severe impairments did not meet or medically equal the criteria of any impairment in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next assessed plaintiff's residual functional capacity (RFC).  He concluded that plaintiff retained the capacity to perform light work, except that her standing and walking were limited to 15 minutes at a time for a total of two hours.  The ALJ further found that plaintiff could sit for 30 minutes at a time with no overall limits, could lift 10 pounds frequently and 20 pounds occasionally, and should avoid concentrated exposure to dust, fumes, odors, and gases.  He added that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and that she was limited to simple, routine, repetitive work, with only occasional public interaction.  The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with" this RFC.

At the fourth step, the ALJ found that plaintiff could not perform her past relevant child care work.

At the fifth step, the ALJ found that plaintiff could perform other work that existed in substantial numbers in the national economy, including work as a mail clerk and a hand packager.  Accordingly, he found that she was not disabled within the meaning of the Act.

In his decision, the ALJ erroneously stated that, at the second hearing, plaintiff testified that she had lost a significant amount of weight after taking up water aerobics, and weighed 234 pounds at that time.  This would have reflected a nearly 100-pound weight loss

since the earlier hearing.  However, the hearing transcript indicates that plaintiff in fact testified that she had lost approximately 30 pounds, and weighed 304 pounds at that time. This 70-pound difference is substantial, especially given plaintiff's height of 4' 10", and it appears that the ALJ's mistaken belief that plaintiff had lost 100 pounds may have affected his analysis of her residual functional capacity.  Plaintiff in fact testified that she was "still way too heavy" for her "body frame," and opined that she would need to lose "at least probably over 100 pounds of weight to feel a whole lot of difference."

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771,

772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if
"the evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at
1039-40.


<u>**Discussion**</u>

Plaintiff contends that the ALJ erred in "improperly dismiss[ing] the severity of her
lymphedema impairment," failed to consider the combined effects of her impairments,
improperly dismissed the opinions of treating and evaluating physicians, improperly
dismissed her testimony, erred in concluding that her lymphedema did not medically equal an
impairment in the "listings," and erred in posing to the VE a hypothetical that did not include
all of her limitations.


1. <u>Omission of lymphedema from list of impairments</u>

Plaintiff contends that the ALJ erred in failing to list lymphedema as one of her severe
impairments, and in failing to consider the effects of this disease in assessing her residual
functional capacity.

I disagree.  As noted above, the references to lymphedema in the record appear to be
based upon plaintiff's assertion that she suffers from this disease.  Plaintiff has cited, and I
have found, no medical record establishing that any treating or examining physician has
diagnosed plaintiff with lymphedema based upon clinical criteria or evaluation.  A claimant
bears the burden of providing medical evidence that establishes both the existence and
severity of an impairment.  20 C.F.R. § 404.1528(a); SSR 96-4p, WL 374187.  The
references to lymphedema in that medical record, which appear to be based upon plaintiff's

FINDINGS AND RECOMMENDATION - 11

own assertions, do not meet this burden.  In the absence of a diagnosis of lymphedema from a treating or examining physician, the ALJ did not err in omitting that disease from the list of plaintiff's severe impairments.

2. Considering effects of all impairments, including obesity

As noted above, Judge Marsh earlier found that the ALJ had failed to evaluate whether plaintiff's obesity, alone or in combination with other impairments, significantly limited plaintiff's ability to do work activities.  Plaintiff now asserts that the ALJ failed to consider the combined effects of her lymphedema and other impairments.  For the reasons set out above, I conclude that the ALJ did not err in omitting lymphedema from the list of plaintiff's severe impairments.  However, I do conclude that the ALJ failed to adequately address the effect of plaintiff's "extreme morbid obesity" on other impairments, and to adequately account for plaintiff's obesity in analyzing her RFC.  Social Security Ruling (SSR) 02-1p requires an ALJ to explain how he or she determined the effects of a claimant's obesity. Here, the ALJ considered, but dramatically understated the extent of, plaintiff's obesity, erroneously stating that plaintiff had testified that she weighed only 234 pounds at a time when she testified that she weighed 304 pounds.  Perhaps in part because of this misunderstanding, the ALJ did not fully analyze the combined effects of plaintiff's obesity and other impairments, and did not credit plaintiff's testimony as to the extent that her obesity limited her ability to perform work activities.

3. <u>Alleged rejection of opinion of treating and examining physicians</u>

a. <u>Applicable rules</u>

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989). Accordingly, an ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions. <u>Lester v. Chater</u>, 81 F.2d 821, 830-31 (9th Cir. 1995).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, <u>id.</u>, and must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting an examining physician's opinion that is contradicted by another physician. <u>Andres v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).


b. <u>Analysis</u>

Plaintiff contends that the ALJ erred in rejecting the functional limitations that Dr. Pribnow imposed, and in failing to restrict plaintiff to sedentary work in light of Dr. Brewster's opinion that plaintiff was limited to sedentary activity.

Plaintiff notes that Dr. Pribnow, her treating physician, limited her to minimal bending and twisting and no pushing, pulling, or lifting more than ten pounds. She also

correctly notes that Dr. Pribnow observed that it was "hard to imag[in]e how she functions very well in a job which would require bending or lifting." However, given that he stated these limitations when plaintiff was recovering from a back injury, it is difficult to determine from the medical record precisely what functional limitations Dr. Pribnow would generally establish for plaintiff. Dr. Pribnow specifically stated that these limitations applied "for now," at a time when plaintiff had not been released to return to work. The ALJ did not necessarily reject Dr. Pribnow's opinion when he formulated his RFC, because Dr. Pribnow had indicated that these limitations were temporary.

Dr. Pribnow's observation that it was difficult to imagine that plaintiff could function very well in a job that required bending or lifting is more problematic, because it appeared to assert that plaintiff would not likely ever successfully perform work requiring those activities. In his RFC, the ALJ found that plaintiff could lift 10 pounds frequently and 20 pounds occasionally, and could occasionally balance, stoop, kneel, crouch, and crawl. These activities appear to be inconsistent with Dr. Pribnow's opinion as to plaintiff's functional limitations, and the ALJ did not acknowledge this inconsistency. Given that Dr. Pribnow's opinion was not contradicted by other medical opinion, the ALJ erred in failing to set out clear and convincing reasons for concluding that plaintiff's RFC exceeded that indicated in Dr. Pribnow's record.

Dr. Brewster, an examining doctor, opined that plaintiff was limited to "sedentary" activities, and that plaintiff could never stoop, kneel, crouch, or crawl. In finding that plaintiff could perform light work that included occasional balancing, stooping, kneeling, crouching, and crawling, the ALJ implicitly rejected Dr. Brewster's opinion as to the severity of plaintiff's functional limitations. Dr. Brewster's opinion as to plaintiff's functional capacity

FINDINGS AND RECOMMENDATION - 14

was uncontradicted by other medical opinion or evidence, and the ALJ erred in failing to provide clear and convincing reasons for its rejection.

Where, as here, an ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1995). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

There is little doubt that an individual who had the functional limitations cited by Dr. Pribnow and Dr. Brewster would be unable to perform the work activities required by most jobs. However, the record before the court does not conclusively establish that such an individual could perform no jobs that exist in substantial numbers in the national economy. Therefore, if the failure to provide adequate reasons for rejecting these opinions was the only error in this action, I would recommend remanding the action for the development of additional vocational evidence. For the reasons set out below, additional errors make remand for an award of benefits appropriate.

FINDINGS AND RECOMMENDATION - 15

4. <u>ALJ's credibility determination</u>

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) <u>citing</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1990)(<i>en banc</i>). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Id.</u>, <u>quoting</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

Plaintiff stated that, in addition to significant hip, back, and knee pain, she suffers from depression, and from insomnia that affects her ability to concentrate. She testified that she can sit for only 10 to 15 minutes, and for a total of only 90 minutes in an 8-hour day. (This exceeds Dr. Brewster's RFC, which indicated that plaintiff could sit for only 1 hour during an 8-hour work day.) Plaintiff testified that she needed to use an electric scooter or a

walker to ambulate, and that she needed to be very careful because her legs were numb much of the time.  Plaintiff testified that she could do very little lifting because doing so caused her hands to hurt badly, and that she could use her hands for only an hour to an hour and a half per day.  She also testified that she needed to elevate her legs much of the time, and that her depression was far worse than it had been at the time of the earlier hearing.

As noted above, the ALJ found that plaintiff had the residual functional capacity required to perform light work, except to the extent that she could only occasionally lift 10 pounds and frequently lift 20 pounds; climb, balance, stoop, kneel, crouch, and crawl up to one-third of the time; stand and walk for 2 hours in an 8-hour work day; and sit for 6 hours in  an 8-hour work day.  He found that plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with" this RFC.

As the ALJ properly acknowledged, plaintiff has medically determinable impairments that can reasonably be expected to cause the sort of symptoms alleged.  Because there is no evidence that plaintiff was malingering, the ALJ was required to provide clear and convincing reasons for rejecting her testimony as to the severity of her symptoms and limitations.  Plaintiff contends that the ALJ did not do so here.  I agree.  The ALJ did not specifically state any reasons for rejecting plaintiff's testimony.  In another part of his opinion, in which he said nothing about plaintiff's credibility, the ALJ stated that plaintiff had a "mild restriction" in her activities of daily living, and noted that plaintiff reported that she drove to the beach occasionally, went out to lunch, went shopping, handled her finances, took care of her mother, went to church on Sundays, had dinner with a friend "on a monthly

basis," and played cribbage with her husband.  He did not state that his credibility determination was based upon these activities.

Perhaps the ALJ intended to support his credibility determination by the inference that these activities were inconsistent with plaintiff's testimony about her limitations.  If so, these observations are far short of the "clear and convincing" evidence required to support rejection of plaintiff's own description of her symptoms and limitations, because these activities are not inconsistent with plaintiff's own description of her limitations.  Occasionally driving to the beach, going out for meals, attending church services, and playing cribbage are not inconsistent with the disabling limitations that plaintiff described.  The record does not support the conclusion that plaintiff provided long-term, ongoing care for her mother. Instead, in April, 2004, plaintiff told an examining psychologist that she was caring for her mother at the time because her mother had broken her arm.  She also told that examiner that her husband helped with the grocery shopping, and that she and her mother shared the cooking.  In a form completed on March 9, 2004, plaintiff indicated that she needed help with cleaning chores, and needed to take breaks when performing such activities.  Nothing in these or plaintiff's other statements about her activities provides any reasons, much less clear and convincing reasons, for discounting plaintiff's credibility.

The ALJ may have also intended to suggest that plaintiff's weight of 234 lbs. was inconsistent with the severe functional limitations that plaintiff alleged.  If so, that suggestion does not satisfy the requirements for discounting a claimant's testimony.  As noted above, the transcript indicates that plaintiff testified that she weighed 304 lbs. at the time of the second hearing, and there is no evidence in the record supporting the conclusion that she weighed 234 lbs. at any time during the pendency of her applications.  Even if plaintiff had weighed

"only" 234 lbs. at the time of the second hearing, the ALJ was required to state clear and convincing reasons for discounting plaintiff's credibility. This requirement could not be satisfied by implication or innuendo.

When an ALJ improperly rejects a claimant's testimony regarding his or her limitations and the claimant would be deemed disabled if the testimony were credited, courts do not remand solely to allow the ALJ to make further findings regarding the testimony. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citing Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988)). Instead, testimony is credited as a matter of law. Id.

Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ did not provide legally sufficient reasons for rejecting plaintiff's testimony, and there are no outstanding issues that must be resolved before a determination of disability can be made. If the ALJ credited plaintiff's testimony, he could have only concluded that plaintiff was disabled. Therefore, the action should be remanded for an award of benefits.

FINDINGS AND RECOMMENDATION - 19

5. Adequacy of hypothetical posed to VE

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 447 (8th Cir. 1983)). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456.

Plaintiff contends that the ALJ's hypothetical did not include all of plaintiff's limitations. I agree. As noted above, the ALJ neither included all of the limitations found by Dr. Brewster, nor provided adequate reasons for failing to do so. The ALJ also failed to include limitations that were consistent with plaintiff's testimony, and failed to provide legally sufficient reasons for rejecting that testimony. Under these circumstances, the VE's testimony, which was based upon the ALJ's hypothetical, does not have evidentiary value.

## Conclusion

A judgment should be entered reversing the Commissioner's decision and remanding this action to the Agency for an award of benefits.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 5, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 20

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of July, 2010.


/s/   John Jelderks
John Jelderks
U.S. Magistrate Judge